IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUTTE ENVIRONMENTAL COUNCIL, ) <br>                Plaintiff, ) <br>            v. ) <br> ) <br> UNITED STATES ARMY CORPS OF ) <br> ENGINEERS; and UNITED STATES FISH ) <br> AND WILDLIFE SERVICE, ) <br>                Defendants. ) | 2:08-cv-01316-GEB-CMK <br><br> <u>ORDER</u> |

       On June 11, 2008, Plaintiff Butte Environmental Council filed a complaint against Defendants United States Army Corps of Engineers ("Corps") and United States Fish and Wildlife Service ("Service"). On June 12, 2008, Plaintiff filed an ex parte Motion for a Temporary Restraining Order ("TRO"), seeking to "stay[] the Corps' issuance of the Section 404 permit and the [Service's] Biological Opinion/Incidental Take Statement for the Stillwater Business Park." (Mot. at 16:20-21.) On June 17, 2008, Defendants filed an Opposition to Plaintiff's Motion for a Temporary Restraining Order. On June 19,

2008, the City of Redding sought and received permission to file an Amicus Curiae Brief in Opposition to Plaintiff's Motion.  The City filed its Brief that same day.  On June 20, 2008, oral arguments were heard on Plaintiff's Motion.

BACKGROUND

The City of Redding ("the City") is developing a business park ("the Stillwater Business Park" or "the Project") in the Stillwater Plains area southeast of downtown Redding, California. (Decl. of Donald B. Mooney in Supp. of TRO ("Mooney Decl."), Ex. B, Dep't of the Army Permit Evaluation and Decision Doc. ("Decision Doc.") at 1.)  The Project's stated purpose is to enhance the City's economic stability by attracting business and industry, thereby improving the quality of life of unemployed and low-paid residents. (Decision Doc. at 13.)  The Project will include road construction, two bridges, utility lines, culvert drains, parking lots, two electrical substations and buildings.  (Id. at 2.)  The Project will directly and indirectly affect critical habitats for the vernal pool fairy shrimp, vernal pool tadpole shrimp and slender Orcutt grass. (Mooney Decl., Ex. A, U.S. Fish & Wildlife Service Formal Endangered Species Consultation on the Proposed Stillwater Business Park Project ("Biological Op.") at 10-11.)  Vernal pool tadpole shrimp are listed as endangered and the vernal pool fairy shrimp and the slender Orcutt grass are listed as threatened under the Endangered Species Act ("ESA").  (Id. at 13, 14, 17.)

Phase IA of the Project, which is under construction at this time, consists of constructing a bridge over Stillwater Creek, a three-lane road and all necessary utility infrastructure.  (Decl. of Richard Duvernay in Support of Amicus Curiae Brief ("Duvernay Decl.")

¶¶ 5, 14.)  The bridge is not being constructed within designated critical habitat areas for the threatened and endangered species, only two small portions of the road cross a critical habitat area and no portions cross a vernal pool.  (Id. ¶ 15.)

On April 18, 2006, the City approved a joint EIS/EIR for the Project.  (Id. ¶ 10, Ex. C.)  On December 27, 2006, the Service issued a Biological Opinion and Incidental Take Statement under section 7 of the ESA for the Project.  The Service concluded that the Project would not jeopardize the continued existence of, or adversely modify or destroy the critical habitat for, the vernal pool fairy shrimp, vernal pool tadpole shrimp and slender Orcutt grass.  (Biological Op. at 29.)  The Service imposed several terms and conditions to the Incidental Take Statement requiring the City to implement various mitigation measures to compensate for critical habitat loss.  On August 9, 2007, the Corps issued an Environmental Assessment and Finding of No Significant Impact under the National Environmental Policy Act ("NEPA") and section 404 of the Clean Water Act ("CWA").  (Decision Doc.)  On August 21, 2007, the Corps issued a permit to the City under section 404 of the CWA.  On February 27, 2008, Plaintiff sent Defendants a 60-day notice letter regarding their alleged violations and of the Plaintiff's intention to file suit.  (Compl. ¶ 3.)

Plaintiff argues that the section 404 permit issued by the Corps violates the CWA because the Corps failed to properly evaluate alternative sites and because the Project will have significant adverse impacts on endangered species and their critical habitats and it will cause a significant degradation of the waters of the United States.  (Mot. at 10-12.)  Plaintiff also argues that the Biological Opinion and Incidental Take Statement issued by the Service violates

the ESA because the Service improperly concluded that the Project will not result in the adverse modification or destruction of critical habitat for the vernal pool fairy shrimp, vernal pool tadpole shrimp or slender Orcutt grass. (Id. at 13.) Plaintiff argues that a TRO should issue because Plaintiff is likely to succeed on the merits of its claims, its interest in the protection of wetlands and endangered species will be irreparably harmed should the Project proceed, and the balance of harms and the public interest weigh heavily in favor of an injunction. (Mot. at 10-16.

## TRO STANDARDS

"To prevail on a motion for temporary restraining order, as with a preliminary injunction, the moving party bears the burden of demonstrating either 1) a combination of probable success on the merits and the possibility of irreparable injury or 2) the existence of serious questions as to success on the merits and irreparable injury along with a sharp tipping of the balance of hardships in the moving party's favor." Sherman v. City of Davis, 2008 WL 1899926, *2 (E.D. Cal. Apr. 25, 2008) (citing Sammartano v. First Judicial District Ct., 303 F.3d 959, 965 (9th Cir. 2003)).

> This traditional test for [TROs and] preliminary injunctions, however, is not the test for injunctions under the Endangered Species Act. In cases involving the ESA, Congress removed from the courts their traditional equitable discretion in injunction proceedings of balancing the parties' competing interests. The 'language, history, and structure' of the ESA demonstrates Congress' determination that the balance of hardships and the public interest tips heavily in favor of protected species. Nevertheless, . . . courts . . . must look at the likelihood of future harm before deciding whether to grant an injunction under the ESA.

Nat'l Wildlife Fed'n v. Burlington N. R.R., Inc., 23 F.3d 1508, 1510-11 (9th Cir. 1994) (citations omitted).

4

To justify the requested TRO, Plaintiff must establish that Defendants' actions pose a "likelihood of irreparable future injury" before a hearing on a preliminary injunction. See Id. at 1512; Cf. Patriot Contract Servs., LLC, v. United States, 2005 WL 954546, *1 (N.D. Cal. Apr. 22, 2005) ("[B]ecause [the allegedly harmful] transition process will have only just begun when the Court is scheduled to hear Plaintiff['s] preliminary injunction motion, Plaintiff will not suffer irreparable harm if a TRO does not issue in the meantime."); Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250, 1260 (10th Cir. 2003) ("If the plaintiffs alleged that the eagles would be harmed only by the use of the completed project, and not by its construction, this would be insufficient to justify a preliminary injunction in advance of the trial court's decision on the merits.").

## ANALYSIS

### I. Irreparable Harm

Plaintiff argues, "In the present case, absent an injunction, the vernal pools and critical habitat that are the subject of this case will be destroyed before a hearing on the merits of this case." (Mot. at 15:12-13.) The City counters that "current construction work involves development of 'Phase 1' of a roadway which, in two small locations, slightly crosses over into the border of an area that has been designated as 'critical habitat area' for these species – but the road does not actually involve any filling or other impacts to any identified vernal pool area." (Amicus Brief at 2:7-11.)

The City's position is unrebutted. Plaintiff has not shown irreparable harm to the threatened and endangered species will occur

1  before a preliminary injunction hearing can be held.  Accordingly,
2  Plaintiff's request for a TRO is denied.
3           IT IS SO ORDERED
4  Dated:  June 20, 2008

                                    _____
                                    GARLAND E. BURRELL, JR.
                                    United States District Judge